IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


KIRK RUBY,                                                           CV. 10-191-MO

           Petitioner,

    v.                                                               OPINION & ORDER

JEFFREY THOMAS,

           Respondent.


    STEPHEN R. SADY
    Office of the Federal Public Defender
    101 SW main Street, Suite 1700
    Portland, OR  97204

        Attorney for Petitioner


    DWIGHT C. HOLTON
    United States Attorney
    KEVIN DANIELSON
    Assistant United States Attorney
    1000 SW Third Avenue, Suite 600
    Portland, OR  97204-2902

        Attorneys for Respondent


1 - OPINION & ORDER

Mosman, District Judge.

Petitioner, Kirk Ruby, an inmate at Federal Correctional Institution ("FCI"), Sheridan, at the time he filed his habeas petition, brings this habeas corpus action pursuant to 28 U.S.C. § 2241. He contends the Bureau of Prisons' ("BOP") program statement rule that specifies Residential Drug Abuse Program ("RDAP") eligibility interviews will be conducted, ordinarily, 24 months from an inmate's proximity to release date is invalid under the Administrative Procedures Act ("APA"), 5 U.S.C. § 706(2)(A), "because the BOP failed to articulate sufficient rational and provide any record basis for adopting a rule that significantly diminishes prisoners' opportunity for consideration for the full one-year sentence reduction" under 18 U.S.C. § 3621(e).[1] (#31, Amended Pet. at 6.) Upon review of the record, the Court finds the "24-month rule" valid under § 706(2)(A) of the APA. Accordingly, habeas relief is not warranted.

## BACKGROUND

I.  Statutory and Regulatory Framework

In 18 U.S.C. § 4042(a) Congress vested the BOP with broad authority for the "management and regulation of all Federal penal and correctional institutions." In 18 U.S.C. § 3621(b), Congress established a statutory mandate that the BOP "make available

---

[1] For clarity, the Court will refer to the rule at issue, found in Program Statement 5330.11 § 2.5.9, as the "24-month rule."

appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse."[2]  In § 3621(e) Congress specified:

> the [BOP] shall, *subject to the availability of appropriations,* provide residential substance abuse treatment (and make arrangements for appropriate aftercare) for all eligible prisoners ... *with priority for such treatment accorded based on an eligible prisoner's proximity to release date.*

The statute defines residential substance abuse treatment as "a course of individual and group activities and treatment, lasting at least 6 months, in residential treatment facilities set apart from the general prison population (which may include the use of pharmocotherapies, where appropriate, that may extend beyond the 6-month period); and defines aftercare as "placement, case management and monitoring of the participant in a community-based substance abuse treatment program when the participant leaves the custody of the [BOP]."  § 3621(e)(5).

The BOP regulations implementing the RDAP mandate in § 3621(e) are codified at 28 C.F.R. §§ 550.53-550.55.[3]  BOP Program Statement P5330.11 details the agency's internal guidelines and implementing

---

[2] Congress also vested the BOP with the discretion to reduce an inmate's term of imprisonment, by not more than one year, upon the successful completion of RDAP.  18 U.S.C. § 3621(e)(2).

[3] Current regulations were promulgated January 14, 2009, following notice and comment, and made effective March 16, 2009. The related Program Statement, P5330.11, was made effective the same day.

3 - OPINION & ORDER

instructions for RDAP in Chapter Two (2), Section 2.5. The stated purpose and scope of the program statement is:

> To establish policy, procedures, and guidelines for the delivery of Psychology Treatment Programs within the Bureau of Prisons (Bureau). The Psychology Treatment Programs Manual is a plain-language, comprehensive set of operational guidelines for the programs operated by psychologists and treatment specialists in the Bureau.
>
> The policy is designed to serve as a training device for psychologists and treatment specialists new to the Bureau. It is also a ready reference for more experienced Bureau psychologists and treatment specialists.

P5330.11 at 1.

RDAP regulations that are relevant to this action define program admission and placement criteria, specifying that an inmate must be able to complete all three components of the program. § 550.53(b)(3) and § 550.53(e). The accompanying program statement instructions specify inmates ordinarily must have 24 months or more remaining on their sentence for admission and placement.[4] Program

---

[4] 28 C.F.R. § 550.53, and P5330.11, Chpt. 2 (underlined text) specify:

  2.5. § 550.53 Residential Drug Abuse Treatment Program (RDAP).
  2.5.1. Target Population. * * *

  (a) *RDAP*. To successfully complete the RDAP, inmates must complete each of the following components:
    (1) *Unit-based component.* * * *
    (2) *Follow-up services*. * * *
    (3) *Transitional drug abuse treatment (TDAT) component.* * * *

  (b) Admission Criteria. Inmates must meet all the following criteria to be admitted into RDAP.
    * * *
    c.    (3)When beginning the program, the

4 - OPINION & ORDER

Statement 5330.11 § 2.5.1 and § 2.5.8. The program statement instructions also specify BOP staff will monitor wait lists, and RDAP eligibility interviews will be conducted "ordinarily no less than 24 months from release."[5] *Id*. § 2.5.5 and § 2.5.9.

II. Statement of the Case

Pursuant to an amended judgment, Petitioner is serving a 128-month sentence following his conviction for violating 21 U.S.C. § 846, conspiracy to distribute a controlled substance. (#31,

---

> inmate must be able to complete all three components described in paragraph (a) of this section.
>
> d. **Ordinarily, have 24 months or more remaining on their sentence**.
>
> * * *
>
> 2.5.5 Referral and Redesignation [§ 550.53(d) *Referral to RDAP*. Inmates will be identified for referral and evaluation for RDAP by unit or drug treatment staff.] An inmate's initial designation will be made by the Designation and Sentence Classification Center (DSCC) in Grand Prairie, Texas.
>
> Institution DAP Coordinators and Regional Program **Coordinators will monitor waiting lists to ensure inmates are transferred for RDAP with sufficient time to complete the entire RDAP program before their release from Bureau custody, ordinarily at 24 months**.
> * * *

[5]2.5.9 The Clinical Interview. § 550.53(e) *Placement in RDAP*. The Drug Abuse Program Coordinator decides whether to place inmates in RDAP based on the criteria set forth in paragraph (b) of this section.
> If verifying documentation is found or produced, and only then, inmates who volunteer for the RDAP will be personally interviewed by the DAPC. **Interviews will be conducted based on the inmate's proximity to release, ordinarily no less than 24 months from release**.  * * *

5 – OPINION & ORDER

Amended Pet., Ex. A at 2.) His projected release date is June 12, 2013. (*Id.*) On September 24, 2009, Petitioner requested that he be interviewed for RDAP. (*Id.*, Ex. B at 1) BOP staff acknowledged Petitioner's application to RDAP and informed Petitioner it would be some time before he was interviewed because "many applicants have shorter projected release dates than yours." (*Id.*) Petitioner filed an administrative appeal. The BOP response informed Petitioner RDAP eligibility interviews are conducted when an inmate is within 24-36 months of their projected release, and that he was forty-one months and 18 days from his projected release date and therefore he had to wait approximately 17 months before being interviewed. (*Id.*, Ex. B at 4.)

Petitioner challenges the "24-month rule" in Program Statement 5330.11 § 2.5.9, arguing that because the BOP failed to articulate sufficient rational and provide any record basis for adopting a rule that significantly diminishes prisoners' opportunity for consideration for the full one-year sentence reduction under 18 U.S.C. § 3621(e), the rule is arbitrary, capricious, an abuse of discretion or otherwise contrary to law, and therefore invalid. (#31, Amended Pet. at 6.) Respondent argues that because interpretive rules are not subject to the procedural requirements of the APA, interpretive BOP program statements should not be subject to the articulated rationale requirement of § 706(2)(A). (#33, at 8-9.)

/ / /

6 - OPINION & ORDER

**DISCUSSION**

I.   Review of Agency Action

Agency action must be consistent with the authorizing statute. *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984). The standards a court applies in reviewing agency action will depend on whether the action was subject to rulemaking notice and comment procedures under § 553 of the APA, or not. Agency action subject to notice and comment must be upheld if it is consistent with the governing statute. *Id*.

Notice and comment requirements do not apply to "interpretive rules, general statements of policy, or rules of agency organization, procedure or practice," unless required under the governing statute. § 553(b)(A). An interpretive rule "clarif[ies] or explain[s] existing law or regulations so as to advise the public of the agency's construction of the rules it administers." *Gunderson v. Hood*, 268 F.3d 1149, 1154 (9th Cir. 2001). Rules that amend or are inconsistent with existing legislative rules are not interpretive rules because they change existing law or policy. *Mora-Meraz v. Thomas*, 601 F.3d 933, 940 (9th Cir. 2010).

When not subject to notice and comment, agency action will be afforded a measure of deference reflecting "the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier pronouncements, and all those factors which give it the power to persuade, if lacking the power to

control." *U.S. v. Mead,* 533 U.S. 218, 228 (2001)(quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944); *Tablada v. Thomas*, 533 F.3d 800, 806 (9th Cir. 2008.)   In the absence of valid regulations, Courts have applied this standard of review to BOP program statements interpreting the authorizing statute. *See Reno v. Koray*, 515 U.S. 50, 55 n.2 and 61 (1995)(affording deference under *Skidmore*, 323 U.S. 134 to BOP program statement interpreting Congress's term "official detention" in § 3585(b)); *Sacora v. Thomas*, 628 F.3d 1059, 1066 (9th Cir. 2010) (applying *Skidmore* deference in reviewing whether BOP memorandum and program statement were consistent with § 3621(b)); *Tablada*, 533 F.3d at 806 (applying *Skidmore* deference to BOP program statement interpretation of statute where BOP conceded its regulation was invalid because the agency failed to articulate a rationale when promulgating the regulation.)

In this action, Petitioner challenges an internal agency guideline/rule, not subject to notice and comment requirements, that interprets and explains an agency regulation (interpreting the governing statute) that was subject to notice and comment procedures.  Petitioner argues that for the guideline to be procedurally valid the BOP must articulate its rationale in the administrative record.  For the reasons discussed below, the Court disagrees.

/ / /

8 - OPINION & ORDER

II. <u>Review under § 706</u>

Under § 706 of the APA, "the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action." "The reviewing court shall hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." § 706(2)(A). "The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins*. Co., 463 U.S. 29, 43 (1983); *Arrington v. Daniels*, 516 F.3d 1106, 1112 (9th Cir. 2008); *Kern County Farm Bureau v. Allen*, 450 F.3d 1072, 1076 (9th Cir. 2006). Agency action is presumed to be valid if a reasonable basis exists for the agency decision. *Sacora v. Thomas*, 628 F.3d at 1068 (citing *Crickon v. Thomas*, 579 F.3d 978, 982 (9th Cir. 2009)); *Mora-Meraz*, 601 F.3d at 941.

In reviewing agency action promulgated after notice and comment, the Ninth Circuit has specified, "[a] reasonable basis [for agency action] exists where the agency considered the relevant factors and articulated a rational connection between the facts found and the choices made." *Arrington,* 516 F.3d at 1112 (citation and internal quotation marks omitted). A determination of whether an agency has satisfied the articulated rationale requirement is

9 - OPINION & ORDER

based solely on the administrative record. *Id*. However, the Ninth Circuit has not ruled on whether interpretive rules exempt from notice and comment are subject to the articulated rationale requirement. *Mora-Meraz*, 601 F.3d at 941.

In *Mora-Meraz*, the petitioner challenged a BOP rule requiring inmates to provide documented proof of substance use within twelve months of imprisonment in order to be eligible for RDAP. He alleged the rule was invalid under two theories: 1) the BOP failed to follow notice and comment requirements under § 553(b) of the APA, and 2) the BOP failed to provide an adequate articulated rationale. The court rejected the petitioner's first theory, holding the 12-month rule was interpretive and not subject to notice and comment. *Id*. at 940. Addressing petitioner's second theory, the court rejected the argument that Ninth Circuit case law requires that all agency rules satisfy the articulated-rationale requirement, stating that discussions of program statements in the context of *Skidmore* deference "have no bearing on whether interpretive rules are subject to § 706's articulated rationale requirement." *Id*. at 941. And because the court found the BOP had "set forth an adequate explanation for the twelve-month [rule]" the court did not need to determine whether the articulated rationale requirement always applies.

/ / /
/ / /

10 - OPINION & ORDER

III. <u>Analysis</u>

    1. <u>Articulated Rationale Requirement</u>

The APA and case law distinguish between substantive agency rules that create new rights or duties, and interpretive agency rules. Substantive rules are subject to the rigors of publication, notice, and comment requirements under § 553 of the APA. The process results in creation of an administrative record that courts can review under § 706(2)(A), and to which courts have applied the articulated rationale requirement in reviewing the validity of agency rules. *See Tablada*, 533 F.3d 800*; Arrington*, 516 F.3d 1106. In contrast, interpretive rules are specifically exempt from the rigors of notice and comment under § 553(b)(3)(A), and implicitly exempt from having to be supported by an administrative record comparable to that resulting from the notice and comment process.

Extending the articulated rationale requirement to interpretive rules would necessitate creation of an administrative record for interpretive rules on par with that required for substantive rules. *See Arrington,* 516 F.3d at 1112 (determination based solely on administrative record.) And such a requirement would nullify the APA's specific exception to rule-making requirements for interpretive rules. Canons of statutory construction and common sense lead the Court to conclude that agency action for the purpose of clarifying or explaining regulations promulgated under the rigors of notice and comment does not require creation of an administrative record comparable to that

resulting from the notice and comment procedures, and need not satisfy the articulated rationale requirement to be valid. *See e.g., Mackey v. Lanier Collection Agency & Services, Inc.*, 486 U.S. 825, 837, and n.11 (1988). Therefore, it is only if the "24-month rule" is inconsistent with the governing statute and regulations that it is invalid under § 706(2)(A).

2. <u>24-month Rule</u>

The statute governing RDAP specifies "priority [for treatment will be] accorded based on an eligible prisoner's proximity to release." 18 U.S.C. § 3621(e)(1)(C). While the statute does not define "proximity to release," the implementing regulations for RDAP admissions specify, "[t]he Drug Abuse Program Coordinator decides whether to place inmates in RDAP based on the criteria set forth in paragraph (b) of this section." 28 C.F.R. § 550.53(e). Paragraph (b) specifies, "[w]hen beginning the program, the inmate must be able to complete all three components [of RDAP] described in paragraph (a) of this section." 28 C.F.R. § 550.53(b)(3). The BOP's implementing instruction specifies "[eligibility] interviews will be conducted based on the inmate's proximity to release, ordinarily no less than 24 months from release." Program Statement 5330.11, Chapt. 2, at 13. The Court reviewed the BOP's drug treatment regulations from the time they were formally introduced.[6]

---

[6] BOP Drug treatment programs were initially referred to as chemical abuse programs. 50 F.R. 48338 (Nov. 22, 1985) (proposed new rule codified at 28 C.F.R. § 550.50 (1985)).

12 - OPINION & ORDER

In 1994, the BOP published both final and interim rules. The interim rules, to be codified at 28 C.F.R. § 550.55(a)(4), outlined eligibility criteria for the residential treatment programs, specifying in relevant part: "[o]rdinarily, an inmate must be within 36 months of release." 59 Fed.Reg. 55342 (Oct. 21, 1994). The eligibility criteria was "intended to allow the Bureau to allocate its resources in an efficient manner." *Id*. at 55343. The BOP received no comments on the interim rule.[7] 60 Fed.Reg. 27692-01 (May 25, 1995). The accompanying Program Statement, 5330.10, specified:

> "inmates are selected for admission to residential programs based upon the time remaining on their sentence. Most inmates will complete residential drug abuse treatment, participate in institution transitional services (if time allows), and then transfer to a [community corrections center]. When a residential treatment program is not appropriate due to time constraints, staff may refer the inmate for the institution's non-residential drug treatment."

P 5330.10., Chpt. 5 at 4.[8]

The BOP expanded and revised its drug treatment program regulations over the years, but the eligibility requirement remained as stated above until 2004, when the BOP published a proposed rule intending to "streamline and clarify [drug treatment program] regulations, eliminating unnecessary text and obsolete

---

[7]Section 550.55 was redesignated as § 550.56 and adopted as final in 1995. 60 Fed.Reg. 27692-01 (May 25, 1995).

[8]Program Statement 5330.10-Drug Abuse Program Manual - Inmate, was issued May 25, 1995 and effective June 26, 1995.

13 - OPINION & ORDER

language, and removing internal agency procedures that need not be in rules text." 69 Fed.Reg. 39887-02 (July 1, 2004). In relevant part, the proposed rule outlined in detail the RDAP program components, duration of the residential component, and requirements for admission, but did not specify that inmates should be 36-month from release. The accompanying program statement, however, continued to specify inmates should be 36-month from release. Program Statement 5330.10 (10/9/1997), Chpt. 5 at 4.[9]

The BOP published its current final rule on January 14, 2009, finalizing in one action the interim rules published in 2000, 2004, and 2006, effective March 16, 2009. 74 Fed.Reg. 1892-01. The purpose of the final rule was, again, to "streamline and clarify [drug treatment program] regulations, eliminating unnecessary text and obsolete language, and removing internal agency procedures that need not be in rules text." *Id*. Revised admissions criteria specified, "[w]hen beginning the program, the inmate must be able to complete all three components described in paragraph (a) of this section." 28 C.F.R. § 550.53(b)(3)(2009).[10] The BOP received no comments addressing RDAP admissions criteria during the notice and comment period, and the rule was adopted as published.[11]

---

[9] Relevant sections of the 1997 Program Statement were not materially different from the prior 1996 version.

[10] Section 550.56 was redesignated as § 550.53 in 2004.

[11] The substantive and procedural validity of 28 C.F.R. § 550.53(b)(3) is not at issue in this proceeding.

14 - OPINION & ORDER

With the new regulations, the BOP issued a revised and expanded Program Statement, P5330.11 - Psychology Treatment Programs, effective March 16, 2009. In relevant part, the admissions criteria for RDAP specify inmates must "[o]rdinarily, have 24 months or more remaining on their sentence." P5330.11, Chpt. 2 at 9. The RDAP referral and redesignation procedures specify staff "will monitor waiting lists to ensure inmates are transferred for RDAP with sufficient time to complete the entire RDAP program before their release from Bureau custody, ordinarily 24 months." *Id*. at 10. The clinical interview procedures for placement in RDAP specify "[i]nterviews will be conducted based on the inmate's proximity to release, ordinarily no less than 24 months from release." *Id*. at 13.

The governing statute directs the BOP to prioritize residential drug treatment based on the inmates' proximity to release. The BOP has done so since the inception of RDAP, specifying in the admissions criteria that the inmates must be within a specified number of months from their release date. The BOP's "24-month rule" explains and clarifies the time-frame in which the BOP expects to conduct RDAP eligibility interviews. It is a tool for the BOP to use in managing the interviews of inmates seeking admission to RDAP, such that they are interviewed based on their proximity to release and the time known to be required for completing the program. The rule does not contradict or change the BOP's obligation under 18 U.S.C. § 3621(e)(1)(C), that inmates be

15 - OPINION & ORDER

prioritized for residential drug treatment based on their proximity to release; or the BOP's requirement under 28 C.F.R. § 553(b)(3), that inmates be able to complete all three components of the program. Nor does it alter the BOP's *discretionary* early release benefit under 18 U.S.C. § 3621(e)(2).

Reviewing the "24-month rule" in the context of the BOP's charge to manage a residential drug treatment program, the Court finds it is reasonable for the BOP to establish a time-frame for conducting program interviews that takes into account the time needed for inmates to complete the program and the requirement that treatment be prioritized based on proximity to release. Therefore, Petitioner's argument that the rule is arbitrary, capricious, an abuse of discretion or otherwise contrary to law cannot stand.

## CONCLUSION

Based on the foregoing, Petitioner's Petition for Writ of Habeas Corpus is DENIED, with prejudice.

IT IS SO ORDERED.

DATED this  21st  day of April, 2011.

                                                    /s/ Michael W. Mosman
                                                  Michael W. Mosman
                                                  United States District Judge